# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK C. COTTER, IN HIS** | * | **CASE NO.** 15-1148_____ |
| **CAPACITY AS TRUSTEE OF THE** | * | |
| **LEVEL III TRADING PARTNERS, L.P.** | * | **JUDGE** _____ |
| **LITIGATION TRUST** | * | |
| | * | **MAGISTRATE** _____ |
| **PLAINTIFF** | * | |
| | * | |
| | * | |
| **ROBERT B. MCMANUS** | * | |
| | * | |
| **DEFENDANT** | * | |
| | * | |

## COMPLAINT FOR AVOIDANCE OF TRANSFERS

**NOW INTO COURT**, through undersigned counsel, comes Patrick C. Cotter, in his capacity as Trustee of the Level III Trading Partners, L.P. Litigation Trust, who, for his Complaint, alleges and requests relief as follows:

## Nature of the Proceeding

1.      This complaint arises from a fraudulent scheme perpetrated by an Alabama limited partnership, Level III Trading Partners, L.P., and it's general partner, Bruce Gwyn ("Gwyn"). Level III Trading Partners, L.P. ("Level III" or "the Fund") operated as a controlled private pool investment fund (commonly known as a "hedge fund.") An involuntary bankruptcy case against Level III was commenced on August 2nd, 2013 in this district. That case was converted to a voluntary Chapter 11 case in this district on October 1st, 2013.

2.      Before entering bankruptcy, Level III attracted approximately $2.7 million in investment. After diverting all or nearly all of the value of the Fund to sham entities controlled by Gwyn, or other entities affiliated with him and his business associates, Gwyn attempted to conceal his self-

dealing and the loss of value in the Fund by disclosing false investment performance, disclosing false asset values, and creating false account statements. Gwyn also attempted to conceal the decline in Level III's value that resulted from his self-dealing through a series of fraudulent transfers to various entities, including the defendant herein. In essence, Gwyn used Level III's greatly depleted capital and capital from new investors to pay redemption proceeds to the Defendant as they attempted to exit the Fund. These redemption proceeds were paid based on inflated statements of what the investments were worth and with fraudulent intent by the transferors, *i.e.* Gwyn and Level III. Plaintiff seeks the return of the principal and fictitious investment gains fraudulently transferred to redeeming investors so that the funds can be equitably redistributed pro-rata to the creditors of the bankruptcy estate.

<u>**Jurisdiction and Venue**</u>

3.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and 157(a), as it both arises under and in Title 11 of the United States Code, and is related to a case under Title 11 of the Bankruptcy Code, said case being the matter entitled *In re Level III Trading Partners, L.P.,* a case under Chapter 11 of the Bankruptcy Code, Case No. 13-12120, United States Bankruptcy Court, Eastern District of Louisiana.

4.      This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and/or (O).

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1409.

6.      This complaint is grounded on 11 U.S.C. §§ 542, 544, 548, 550, 551 and/or 553 and laws of the States of Louisiana and Alabama.

## The Parties

7.    The plaintiff is Patrick C. Cotter, in his capacity as Trustee of the Level III Litigation Partners, L.P. Litigation Trust, which was created by the confirmation of the Chapter 11 Plan in the bankruptcy case in this district. The confirmed Chapter 11 Plan vests the Level III Trading Partners, L.P. Litigation Trust with full authority to prosecute all causes of action of the bankruptcy estate.

8.    Made defendant herein is Robert B. McManus ("Defendant"), a person of the full age of majority who, upon information and belief, is domiciled in Camas, Washington.

## Gwyn's Fraudulent Scheme

9.    From 2007 to 2009, Level III traded commodities through two subsidiaries registered with the National Futures Association, Level III Trading, LLC and Level III Management, LLC. Beginning in 2010, Gwyn liquidated all of the Fund's assets and transferred them to small private companies in which he held direct or controlling interests, and into shares and other assets of two thinly traded public companies where he acted as officers and directors: Treaty Energy Corporation and Orpheum Property, Inc. The transfers severely depleted the value of the Fund.

10.    In addition, in 2010 and 2011 Gwyn paid himself management incentive fees based on fictitious or inflated values of the Fund, and regularly used the Fund's cash for personal expenses, further depleting the value of the Fund.

11.    The systematic self-dealing by Gwyn rendered Level III insolvent as of or before September 1st, 2010. In order to conceal the losses created by this self-dealing, Gwyn falsified the value of the Fund's investments and fraudulently misrepresented the value of the Fund's investment performance in financial summaries that were sent to clients, third party valuation consultants, and outside accountants.

12.     According to Level III's annual certified pool financial statements, participants had contributed over $2.7 million to the Fund since its inception in 2007, and had withdrawn almost $2.4 million by June 2012. On those occasions when Fund participants requested redemptions, Gwyn used grossly overinflated values in calculating the redemption amounts with the results that the redemption amounts exceeded the true value of the Fund's participants' interest.

13.     From the fourth quarter of 2010, Level III received various redemption requests that exceeded the Fund's bank account balances and the ability of the Fund to meet those redemption requests. In order to pay withdrawing investors, and in an attempt to conceal the ongoing fraud and thereby hinder, delay, or defraud other current and prospective investors, Level III used money received from other investors to pay the withdrawing investors' redemption requests.  In addition, the withdrawing investors were paid the inflated amounts reflected in the falsified financial statements, including fictitious profits, rather than the true depleted balances.

14.     From December 2011 to June 2012, Level III's bank account was either overdrawn or maintained a minimal balance of between $50 and $100 dollars. On June 12, 2012, the National Futures Association took emergency enforcement action against Level III and Gwyn on the grounds that "it appears that [Level III] and Gwyn have misappropriated investors' Funds and misled customers regarding the value of their investments in Level III Trading Partners LP".

15.     There were no further transactions on Level III's accounts after the June 12, 2012 emergency action by the National Futures Association. On August 2nd, 2013, a group of investors filed the aforementioned Involuntary Chapter 7 Petition.

### The Fraudulent Transfers to Defendants

16.     At the time the Defendant redeemed his investment in Level III, he knew or should have known that Level III was fraudulent and insolvent, and that the redemption payments were made

in furtherance of a fraud. Upon information and belief, the Defendant was "tipped" by investment advisors or others to withdraw their investment from Level III. In addition, there were a number of red flags that did or should have put the Defendant on actual or inquiry notice of Level III's fraud and/or insolvency.

17.     Level III made the following transfers of its property to or for the benefit of the Defendant, from its Capital One Business Checking bank account:

- September 28, 2010, wire transfer:     $25,000
- October 6, 2010, wire transfer:     $40,000
- December 12, 2010, wire transfer:     $50,000
- April, 20, 2011, wire transfer:     $5,000

18.     The redemption payments was effected at a time when the Fund was insolvent and thereby increased the Fund's insolvency. Alternatively, the redemption payments rendered the Fund insolvent.

19.     Upon information and belief it is alleged that as to the Defendant, the Trustee asserts the rights and powers of, or seeks to avoid any transfer of property of Level III or any obligation incurred by Level III that is voidable by—

(1) a creditor that extends creditor to the debtor at the time of the Petition Date and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the Petition Date, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists;

20.     Upon information and belief it is alleged that as to the Defendant, the Trustee seeks to avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable

under section 502 of Title 11 or that is not allowable only under section 502(e) of this title.

21.     Upon information and belief it is alleged that as to the Defendant, the Trustee seeks to avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor which was fraudulently obtained and/or was a nullity, simulation or sham under applicable Louisiana law.

22.     Upon information and belief, the Trustee seeks to avoid any transfer of an interest of Level III in property or any obligation incurred by Level III which is subject to a revocatory action under applicable Louisiana law because the Defendant knew or should have known that the transfer or obligation incurred would cause or increase the Fund's insolvency.

23.     Upon information and belief it is alleged that as to the Defendant, the Trustee seeks to avoid any transfer of an interest of Level III in property or any obligation incurred by Level III which was fraudulently obtained and/or was a nullity, simulation or sham under applicable Alabama law.

24.     Upon information and belief, the Trustee seeks to avoid any transfer of an interest of Level III in property or any obligation incurred by Level III which is subject to avoidance under applicable Alabama Uniform Fraudulent Transfer Act law because the Defendant knew or should have known that the transfer or obligation incurred would cause or increase the debtor's insolvency.

25.     By reason of the foregoing, the transfers to the Defendant or obligations incurred by Level III described above are avoidable transfers under 11 U.S.C. §544(a) and/or (b).

26.     Pursuant to 11 USC §550(a) ". . . to the extent that a transfer is avoided under §§ . . . 544, 548, 549 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of

such transfer or entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such transferee."

27.     Pursuant to 11 USC §551, "any transfer avoided under §§ . . . 544, 548, 549 . . . of this title . . . is preserved for the benefit of the estate but only with respect to the property of the estate."

28.     To the extent that transfers made from Level III to the Defendant are avoided pursuant to 11 USC §§544, 548 and 549 the transfers may be recovered and preserved for the benefit of the Estate pursuant to 11 USC §§550 and 551, respectively.

## First Claim For Relief

29.     The factual allegations set forth in the preceding are re-pled and incorporated herein by reference as if copied *in extenso*.

30.     The transfers set forth in paragraph 17 herein caused or increased the debtor's insolvency.

31.     Accordingly, the transfers set forth in paragraph 17 herein should be revoked and annulled in accordance with Article 2036 of the Louisiana Civil Code.

32.     With the revocation and annulment of the transfer identified in paragraph 17 herein, the Defendant is liable to the trustee in the amount of $120,000 pursuant to 11 U.S.C. § 550(a).

## Second Claim For Relief

33.     The factual allegations set forth in the preceding paragraphs are re-pled and incorporated herein by reference as if copied *in extenso*.

34.     The transfers were made by Level III to the Defendants with the actual intent to hinder, delay, or defraud its creditors.

35.     At the time of the transfers, Level III was insolvent or became insolvent shortly after the transfer was made.

36.     As a result of the foregoing, the transfers set forth in paragraph 17 herein should be avoided

under the Alabama Uniform Fraudulent Transfer Act, Ala.Code 1975, § 8–9A–1 et seq.

37.     With the revocation and annulment of the transfers identified in paragraph 17 herein, the

Defendant is liable to the trustee in the amount of $120,00 pursuant to 11 U.S.C. § 550(a).

WHEREFORE, the plaintiff prays that after service of summons and trial on the merits,

there be judgment rendered against the defendant, Robert B. McManus, in the amount of $120,000,

plus legal interest and all costs, as well as all other relief to which he is entitled.

Respectfully submitted by Counsel for Patrick C.
Cotter, in his capacity as Trustee of the Level III
Litigation Partners, L.P. Litigation
Trust

**STEFFES, VINGIELLO, MCKENZIE, LLC**
13702 Coursey Boulevard Building 3
Baton Rouge, LA 70817
Telephone: (225) 751-1751
Facsimile: (225) 751-1998
Email: pgarrity@steffeslaw.com

By: s/ *Patrick S. Garrity*_____
    Patrick S. Garrity #23744

**PLEASE SERVE:**

**Robert B. McManus**
**1430 NW Whitman Street**
**Camas, WA 98607**